## STARR v. KLEISER.

1. PARTNERSHIP — SUBSTITUTION OF ANOTHER—RATIFICATION—ACCOUNTING.

   In a suit for an accounting in a partnership enterprise, where plaintiff, being unable to raise his share of the capital, was substituted by another, whether his partners had the right to so substitute another is immaterial, in view of the fact that he ratified and acquiesced in the change by repurchasing, after knowledge of all material facts, one-half of his former interest.

2. SAME—FRAUD AND DECEIT—MATERIALITY—RATIFICATION.

   The fact that defendants misstated or concealed the identity of the person substituted for plaintiff, although a moral wrong, *held,* not material, and therefore not sufficient to set aside the agreement after it had been ratified by plaintiff.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted June 13, 1923. (Docket No. 14.) Decided July 19, 1923.

Bill by Ralph W. Starr against Hugh M. Kleiser and another for an accounting. From a decree for plaintiff, defendants appeal. Modified and affirmed.

*Clyde W. Ketcham,* for plaintiff.

*Mason & Sharpe,* for defendants.

CLARK, J.    The constructing of certain concrete
highway was sublet to defendant Kleiser.    He, de-
fendant Hoel and plaintiff Starr on June 30, 1921,
entered into a written agreement to do the work.
Kleiser was to pay in $4,000, Hoel $3,000, and Starr
$3,000, as capital. . The capital was to be treated as
a loan and interest paid thereon.    The amounts were
to be paid over before July 7th following.    Starr was
to devote his time to the work as foreman and man-
ager.    Kleiser was to devote a part of his time as
general manager.    Hoel was to do certain clerical
work.    Starr and Kleiser were to and did receive a
weekly compensation.    The profits were to be divided,
3/11 to Hoel, 3/11 to Starr and 5/11 to Kleiser.
Within the time Kleiser paid in $3,500, Hoel $3,000,
and plaintiff Starr nothing.    Starr was attempting to
borrow the money.    Tucker, a business associate of
Hoel, tried to aid by borrowing for Starr.    The bank
refused to loan for the reasons that the loan was not
for Tucker personally but for another, and that funds
were scarce.    Starr's efforts with Tucker continued
for some time without result until finally Starr was
told by Hoel that Tucker would not get the money.
Kleiser complained of Starr's failure and delay.
Funds were needed to pay bills and to take discounts.
From time to time Kleiser borrowed, on the faith of
the contract for construction it seems, considerable
amounts of money.    Finally about the middle of a
week, late in July, he told Starr that bills for material
would be due the first of the week following, that
funds must be found to meet them and that Starr
must determine by the Saturday following whether he
would pay or not.    Starr went at once in search of
the money, arriving finally at the home of his father

in Indiana on the Sunday following.    On Monday, aided by his father, he got $1,000 and the promise of more funds later.    He telegraphed Kleiser at once that he was mailing draft.    Not hearing from Starr on Saturday, Kleiser and Hoel met Tucker Sunday and requested that he take Starr's place in the matter and pay in the $3,000.    Tucker agreed to do it and on Monday paid in the amount.    On Starr's return his draft was returned to him and he was advised that other arrangements had been made.    After some discussion Starr returned to work on the job.    There was discussion at times about Starr's having lost his interest and finally Kleiser, Hoel and Starr met to consider the matter.    We find that Starr then knew that his interest had been taken by another and that such other had paid in the $3,000, but he did not know that such other was Tucker, Starr having been told that his place had been taken by a man from Chicago. The reason for this misstatement was that Tucker had requested that Starr be not advised of the matter because of the failure of his said attempts to borrow for Starr.    At such meeting defendants told Starr, in substance, that he could get back his interest for $3,500.    Starr did not have the money.    We find that it was finally agreed that he would take back one-half of his former interest for $1,750, he having sufficient funds to do that, $1,500 being for one-half the amount paid in and $250 bonus to the one who had taken his place.    Starr paid Kleiser $1,750.    Kleiser paid Tucker $1,750.

The contract was completed.    Bills and loans were paid.    The capital payments were returned with interest including $1,500 and interest to Tucker, and $1,500 and interest to Starr.    The profits, $9,020, were divided and paid, 5/11 to Kleiser, 3/11 to Hoel, 3/22 to Tucker and 3/22 to Starr.    There also remained on hand tools and equipment of a value since agreed upon,

$3,572.47. About this time, February, 1922, Starr claims to have found for the first time that Tucker was the other man in the matter. Claiming fraud and deceit in the taking of his 3/11 interest and in the subsequent transaction, he filed a bill for an accounting and had decree finding material facts true as charged and requiring defendants Hoel and Kleiser to pay to plaintiff a further 3/22 of profit, $1,230, being about the amount paid Tucker as profit, and 3/11 of the value of the machinery, $974.31. Defendants have appealed. The case is well briefed and was argued ably by counsel on both sides. We have read the record with much care. We think the decree should be modified. Defendants profited nothing by the substitution of Tucker in the matter, except that the amount to have been contributed by plaintiff was thus made immediately available. The interests of Kleiser and Hoel were increased in no way by the substitution. Tucker was actually paid 3/22 of the profit. Defendants kept none of such share. That Tucker, or Tucker and defendants, purposely carried plaintiff along and produced the delay in payment of plaintiff's share of the capital, or that they or any of them had any purpose or intent to "freeze" plaintiff out of the matter cannot be found on this record. It cannot be said that, prior to the making of the arrangement by defendants with Tucker that he succeed plaintiff, defendants had practiced any fraud or deceit toward plaintiff. Whether defendants had a right to substitute Tucker for plaintiff and the validity of such transaction we need not determine, being of the opinion that plaintiff ratified and acquiesced in the change by his re-purchasing, with knowledge of all material facts, one-half of his former interest. We find it difficult to believe that plaintiff, occupying the position in the matter that he did, did not learn during a period of several months the name of the fourth

party who was to share with him and the others in the profits, and perhaps losses if any, on the job, and difficult, too, to believe that plaintiff did not have such knowledge when he accepted the distribution of profit. But granting that he did not know, Was defendant's misstatement or concealment of the name of the fourth party material?    Is it sufficient to support the decree in the absence of any other fraud, deceit or misrepresentation?    The misstatement or concealment may constitute a moral wrong, but, under the facts, here, not a legal one, for it was not material and therefore not sufficient to set aside an otherwise valid agreement.    See *Hall* v. *Johnson*, 41 Mich. 286; *Davis* v. *Davis*, 97 Mich. 419; 27 C. J. p. 75.    The plaintiff will recover but 3/22 of the value of the tools and machinery, or the sum of $487.16.    The allowance of $1,230, 3/22 of the profits, will be eliminated.    The decree so modified is affirmed, with costs of this court to defendants.

WIEST, C. J., and FELLOWS, McDONALD, BIRD, MOORE, and STEERE, JJ., concurred.    SHARPE, J., did not sit.